# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NORTEK PRODUCTS (TAICANG) LTD., NORTEK PRODUCTS LTD., CUSTOMER CARE LTD. and NORWOOD INDUSTRIES, LTD., <br><br> Plaintiffs, <br><br> v. <br><br> FNA GROUP, INC., d/b/a O.E.M. INDUSTRIES d/b/a FAIP NORTH AMERICA, d/b/a SIMPSON DELCO, FNA IP HOLDINGS, INC., <br><br> Defendants <br><br>―――――――――――――――――――――――― <br><br> FNA GROUP, INC., d/b/a O.E.M. INDUSTRIES d/b/a FAIP NORTH AMERICA, d/b/a/ SIMPSON DELCO, FNA IP HOLDINGS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NORTEK PRODUCTS (TAICANG) LTD., NORTEK PRODUCTS LTD., CUSTOMER CARE LTD. and NORWOOD INDUSTRIES, LTD., <br><br> Defendants. | 10 C 2813 <br><br> **Judge Ronald A. Guzmán** |

## MEMORANDUM OPINION AND ORDER

Plaintiffs have sued defendants for breach of contract. Defendants have filed a counterclaim alleging, among other things, breach of the parties' Nondisclosure, Noncompetition and Non-solicitation Agreement ("NDA"). Plaintiffs filed a motion to dismiss this counterclaim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) on the grounds that the

"Noncompetition" and "Non-solicitation" provisions of the NDA are unenforceable as a matter of law. For the reasons provided herein, the Court denies the motion.

**Facts**

In 2003, plaintiffs Nortek Products (Taicang) Limited, Nortek Products Limited, Customer Care Ltd., and Norwood Industries, Limited (collectively referred to herein as "Nortek") began manufacturing pressure water products for defendants FNA Group, Inc. d/b/a O.E.M. Industries d/b/a FAIP North America, d/b/a Simpson Delco, FNA IP Holdings, Inc. (collectively referred to herein as "FAIP Companies"). (Am. Countercls. ¶ 9.) Sometime in 2008, FAIP Companies asked Nortek to manufacture pressure washers that included specific hoses, for which FAIP Companies held a patent or involved specific technology for which FAIP Companies had applied for a patent. (*Id.* ¶¶ 16, 18, 20.) Before manufacturing the patented and soon-to-be patented products, Nortek and FAIP Companies entered into two agreements: a "Technology and Know-How License Contract" ("License Contract") and a related "Nondisclosure, Noncompetition and Non-solicitation Agreement" ("NDA"), both of which are attached to FAIP Companies' counterclaim. (*Id.* ¶¶ 16, 18, 24.)

Under the License Contract, FAIP Companies granted Nortek a one-year license to use its "Technology and Know-how" for manufacturing certain "Licensed Products" defined as: (1) "All hoses that fall under Patent Number 5,964,409, 6,779,745 and patent pending application 2008010;" and (2) the "Royalty fee of $3.00 per unit for Bauhaus Smart Technology." (*Id.* ¶¶ 16, 18, 20.) The License Contract expired on October 10, 2009. (*Id.* ¶ 22.)

The NDA was entered into on the same day as the License Contract. (*Id.* ¶ 24.) The Noncompetition provision of the NDA is effective for three years after the expiration of the

License Contract, and does not have a geographic limitation. (*Id.* ¶ 26.) The Noncompetition provision provides that Nortek shall not:

> [w]ithin the applicable Territory, directly or indirectly engage in any of the Business activities, whether as an advisor, principal, owner, director, officer, agent, employee, partner, consultant, investor, lender, stockholder, associate, or otherwise; or
>
> Be the record or beneficial, direct or indirect, owner of any outstanding capital stock or voting securities . . . of any Person which (I) is engaged, directly or indirectly, in any business activities encompassed by the Business (A) with respect to any Customer, or (B) within the applicable Territory[;] or
> (ii) within the applicable Territory, owns, directly or indirectly, any interest in any other business which is engaged, directly or indirectly, in any business activities encompassed by the Business.

(*Id.* ¶ 25.) "Business" is defined as "the manufacture, assembly, use, sale, marketing, after-sale service or other disposition of any Licensed Product, any related ancillary activities and any other business [FAIP Companies] may license (or co-operate with) [Nortek] or consider licensing (or co-operating with) [Nortek] during the term." (*Id.* ¶ 27.) "Customer" is defined as:

> any customer of [FAIP Companies] or any person to whom or with whom [FAIP Companies] or any agent, distributor or independent sales representative of [FAIP Companies] (a) has provided or provides any Licensed Products prior to the termination or expiration of the License Contract, (b) has actively pursued for Business purposes prior to the termination or expiration of the License Contract, or (c) has otherwise engaged in Business activities prior to the termination or expiration of the License Contract.

(*Id.* ¶ 28.)

The Non-solicitation provision of the NDA is effective for ten years after the expiration of the License Contract and does not have a geographic limitation. (*Id.* ¶ 26.) It states that Nortek shall not "directly or indirectly solicit, or attempt to persuade, any Customer or supplier of [FAIP Companies] to cease doing business with [FAIP

3

Companies] or to reduce the amount of business it does with [FAIP Companies]." (*Id.* ¶ 25.)

Further, the NDA contains a nondisclosure provision, which states that Nortek had been "given access and exposure to trade secrets and confidential information" prior to and during the consummation of the transactions contemplated by the License Contract, (*id.* Ex. D, NDA at 3), and that, among other things, Nortek would not disclose such information for any purpose detrimental to FAIP Companies (*id.* at 3-5).

FAIP Companies allege that on or about June 17, 2010, Nortek breached the NDA by "solicit[ing] business from" Customers as defined in the NDA and "engag[ing] in unauthorized Business activities with Licensed Products" including offering products that were manufactured by using "Technology and know-how," which consists of confidential and proprietary business information that Nortek acquired knowledge of pursuant to the License Contract. (*Id.* ¶¶ 24, 48-54, 64-67.)

## Discussion

On a Rule 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded allegations in plaintiff's complaint, drawing all reasonable inferences in plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The complaint should give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "[D]etailed factual allegations" are not required, but the plaintiff must allege facts that when "accepted as true . . . state a claim to relief that is plausible on its face" and raise the possibility of relief above the "speculative level." *Id.* at 555, 570.

Nortek argues that the restrictive covenants of the NDA are unenforceable as a matter of law.[1] In Illinois, restrictive covenants are analyzed as either covenants to an employer, which are made ancillary to an employment contract or as covenants to a purchaser, which are made ancillary to the sale of a business. *Bus. Records Corp. v. Lueth*, 981 F.2d 957, 959 (7th Cir. 1992). Nortek argues that the covenants should be analyzed under the employer-employee framework, while FAIP Companies argues that the sale of business framework should apply. The Court agrees with Nortek. A covenant to an employer serves to protect information or relationships that the employee might acquire while working for the employer, while a covenant to a purchaser serves to protect the value of what the purchaser has bought, *i.e.* the goodwill of the business. *Id.* Accordingly, because the covenants in the License Contract serve to protect confidential customer information and customer relationships, they are more akin to covenants ancillary to an employment contract than to a sale of a business. *See Stunfence, Inc. v. Gallagher Sec. (USA), Inc.*, No. 01 C 9627, 2002 WL 1838128, at *6 (N.D. Ill. Aug. 12, 2002) (analyzing a restrictive covenant between a manufacturer and distributor under the employer-employee rubric where the covenants allegedly protected customer information and relationships). Therefore, the Court will evaluate the covenants under the employer-employee framework.

The next issue is whether the restrictive covenants are enforceable in Illinois, which is a question of law. *Liautaud v. Liautaud*, 221 F.3d 981, 986 (7th Cir. 2000) (citations omitted). A restrictive covenant is enforceable if the terms of the agreement are "reasonable and necessary to protect a legitimate business interest of the employer," a determination that turns on the facts and circumstances of each case. *Outsource Int'l, Inc. v. Barton*, 192 F.3d 662, 666 (7th Cir. 1999)

---

[1] The parties agree that Illinois law governs. (*See* Am. Countercls. Ex. D, NDA at 6.)

(quoting *Office Mates 5, North Shore, Inc. v. Hazen*, 599 N.E.2d 1072, 1080 (Ill. App. Ct. 1992)). A restrictive covenant's reasonableness is measured by its hardship on the employee, its affect upon the general public and the reasonableness of the time, territory and activity restrictions. *See Liautaud*, 221 F.3d at 987 (citing *Decker, Berta & Co., Ltd. v. Berta*, 587 N.E.2d 72, 77 (Ill. App. Ct. 1992)).

Nortek first contends that the restrictive covenants are void as a matter of law because they do not protect a legitimate business interest of the FAIP Companies. *See Outsource Int'l, Inc.*, 192 F.3d at 666 (explaining that a protectable business interest is a prerequisite for enforcing a covenant not to compete); *Advent Elecs., Inc. v. Buckman*, 112 F.3d 267, 274 (7th Cir.1997) (finding that a protectable business interest is a prerequisite for enforcing a restrictive covenant). While it is true that an employer ordinarily has no proprietary interest in its customers, there are two general situations in which such an interest may be found: (1) where the employer has a near permanent relationship with its customers and but for his or her employment, employee would not have had contact with them; or (2) where the former employee learned trade secrets or acquired other confidential information while in defendant's employ and subsequently attempted to use it for his or her own benefit. *See Outsource Int'l, Inc.*, 192 F.3d at 666 (citations omitted).

Here, Nortek acknowledged in the NDA that it ha[d] been "given access and exposure to trade secrets and confidential information" prior to and during the consummation of the transactions contemplated by the License Contract. (Am. Countercls. Ex. D, NDA at 3-4.) And FAIP Companies allege that Nortek used this information to solicit business for Nortek's benefit. (*Id.* ¶¶ 24, 48-54; 64-67.) Nortek argues that FAIP Companies did not provide them with any confidential information or that even if they did, Nortek did not use the information in violation

6

of the NDA. In ruling on a motion to dismiss, however, the Court accepts as true all of FAIP Companies' well-plead allegations and views such allegations in its favor. *Killingsworth*, 507 F.3d at 618. Therefore, the Court finds that FAIP Companies has alleged a legitimate business interest that serves as a valid basis for stating a claim for breach of the restrictive covenants.

Next, Nortek argues that the restrictive covenants are void because they are unreasonable in both duration and geographic range. *See Giffney Perret, Inc. v. Matthews*, No. 07 C 0869, 2009 WL 792484, at *12 (N.D. Ill. Mar. 24, 2009) ("Even if an employer can support its restrictive covenant with a legitimate business interest, the covenant must also contain reasonable terms."). Restrictive covenants that lack geographic limitations are not *per se* unreasonable in Illinois unless they are beyond the needs of the employer to protect its legitimate business interests. *Liautaud*, 221 F.3d at 987; *see also Roberge v. Qualitek Int'l, Inc.*, No. 01 C 5509, 2002 WL 109360, at *6 (N.D. Ill. Jan. 28, 2002). Similarly, time restrictions must also be reasonably related to protecting the employer's legitimate business interests. *See, e.g.*, *Prairie Eye Ctr., Ltd. v. Butler*, 713 N.E.2d 610, 612 (Ill. App. Ct. 1999) (upholding a two year restriction because it takes that long to secure a client).

Nevertheless, whether such restrictions are reasonable in this case requires the Court to make a fact-based determination that is not appropriate at the motion-to-dismiss stage. *See, e.g.*, *Restaurant.Com, Inc. v. Savad*, No. 08 C 2978, 2008 WL 3992695, at *3 (N.D. Ill. Aug. 21, 2008) (holding that whether a restrictive covenant is reasonable is a fact-based determination not appropriate at the motion-to-dismiss stage); *Integrated Genomics, Inc. v. Kyrpides*, 2008 WL 630605, at *6-8 (N.D. Ill. Mar. 4, 2008) (same); *AutoMed Tech., Inc. v. Eller*, 160 F. Supp. 2d 915, 923 (N.D. Ill. 2001) (same). A determination of whether the restrictions in this case are reasonable would require the Court to assess whether FAIP Companies in fact have a protectable

7

interest, as alleged, the hardship to Nortek, the hardship to the public and the reasonableness of the time and geographic range required to protect the FAIP Companies' alleged protectable interest, *i.e.*, whether and why FAIP Companies need a non-solicitation clause to protect confidential information when there is a non-disclosure clause for this purpose. *See Giffney*, 2009 WL 792484, at *13 (holding on summary judgment that the non-solicitation clause was overbroad where employer had no protectable interest in its customers, and had a nondisclosure clause to protect its interest in its confidential information). Among the facts necessary for this kind of assessment would be the nature and size of FAIP Companies, where FAIP Companies do business and with whom, what confidential information Nortek received during the parties' one-year agreement, and which customers Nortek had contact with. These are facts that the Court does not know at this time and will need to assess to determine the reasonableness of the restrictive covenants at issue. *See Integrated Genomics, Inc.*, 2008 WL 630605, at *6-8. For these reasons, the Court denies Nortek's motion to dismiss.

## Conclusion

For the reasons stated above, the Court denies Nortek's motion to dismiss [doc. no. 88].

**SO ORDERED**  ENTER:   May 24, 2011

*Ronald A. Guzman*

**RONALD A. GUZMAN**
**U.S. District Judge**