# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Jeffrey Cole | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 2813 | **DATE** | 9/12/2011 |
| **CASE TITLE** | Nortek Products (Taichang) Limited, et al vs. FNA Group, Inc., et al | | |

**DOCKET ENTRY TEXT**

As set out in the Written Opinion below, Plaintiffs' Motion for Entry of a Protective Order Limiting Scope of Discovery [89] is denied. To view this order in its entirety, please click the hyper-link document number.

■[ For further details see text below.]                                         Notices mailed by Judicial staff.

## WRITTEN OPINION

Nortek has filed a motion [# 89] seeking a protective order under Rule 26(c) of the Federal Rules of Civil Procedure limiting the scope of discovery on Count II of FNA's counterclaim to "information and communications relating to the Licensed Products identified in Appendix 2" of the licensing agreement that the parties entered into sometime in 2008. (Motion at 13). The licensing agreement permitted Nortek to manufacture certain FNA products "which are set out in Appendix 2 [of the agreement], as the same may be supplemented and amended from time to time by [FNA] in its sole discretion." (Motion, Ex. A § 1.4). It is Nortek's position that the plain language of the licensing agreement limits the products at issue in this suit to those set forth in Appendix 2, and that anything outside of Appendix 2 is not covered by the contract and is, therefore, irrelevant. Meanwhile, FNA contends that the parties intended and agreed that other products and technologies not listed in Appendix 2 were to be covered by the licensing agreement and protected by the accompanying non-disclosure, non-competition, and non-solicitation agreement that the parties had entered into in order to safeguard "confidential and proprietary business information that FNA provided to Nortek under the License Contract." (Response at 3-4).

The motion comes as a response to FNA's discovery requests that it be permitted to inspect certain Nortek products that Nortek argues were not covered by the licensing and non-solicitation agreements. (*Id.* at 2). FNA also requested that Nortek disclose "confidential communications" between Nortek and certain of its potential customers. (*Id.* at 2, 12).

On June 22, 2011, I held an in-chambers conference with the parties regarding the resolution of the motion. (*See* Minute Entry of 6/22/2011, [# 117]). At that meeting, the parties agreed to a protocol by which FNA would be allowed to conduct physical examinations of the Nortek products it had sought in discovery. The balance of the motion (i.e. the part relating to FNA's request for Nortek's communications with potential customers) was left unresolved.

Having had the benefit of monitoring the parties' progress with regard to the agreement concerning physical examinations, the portion of the motion left pending may now be decided. The motion effectively seeks an order interpreting the scope and reach of the licensing agreement. But such a ruling would be premature, as it

would decide the very rights and obligations that form the basis of Nortek's claims and FNA's counterclaims and without the benefit of discovery that might affect the proper resolution of the contract's meeting..

FNA's view is that the contract covers a wider array of products and technology than explicitly listed in Appendix 2. The discovery it has requested seeks to explore whether Nortek's current products, which FNA saw or learned were being displayed to its customers at shows or line reviews, are using any of the technology FNA supplied Nortek under the licensing agreement, or whether Nortek is soliciting FNA's customers or competing with FNA in a way that violates the non-compete agreement. Clearly, a contract that explicitly contemplates that the products specifically listed in Appendix 2 may be "supplemented and amended from time to time by [FNA] in its sole discretion," leaves room for the implication that the agreement may or may not have covered products not listed in the Appendix. The point is, the contract may not as straightforward as Nortek argues.

Nortek argues that the disclosure of its confidential communications with its potential customers "could be harmful" since those customers may no longer do business with Nortek if they have doubts as to Nortek's ability to keep communications and information about prototypes from their competitors. (Motion at 12-13). But, all this seems merely conjectural, and the vague assertion that such disclosure "could" be harmful is insufficient to establish the type of concrete harm contemplated by Fed. R. Civ. P. 26(c). And even if it is, it is the kind of thing that can easily be resolved by an agreement between the parties that any disclosure of confidential communications between Nortek and its customers or potential customers be for attorneys'- eyes only. See Autotech Technologies Ltd. Partnership v. Automationdirect.com, Inc. 235 F.R.D. 435, 445-446 (N.D.Ill.,2006). The parties have agreed to similar arrangements in the past, and FNA's counsel has offered that as an acceptable solution in its brief. (*See* Response at 7-8). Communications between Nortek and its potential customers could be relevant to FNA's counterclaims – particularly its claim that Nortek breached the non-compete and non-solicitation agreement. At the very minimum, FNA's attorneys should be allowed to see those communications that could be essential to its case unless there is some clear impediment to its doing so.

This does not mean Nortek may not turn out to be right in its interpretation of the contract. It is simply to say that that determination must await a more fully developed record. This is not the time to attempt to resolve the ultimate meaning of the contract, and the motion is, therefore, denied. [# 89].