**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NORTEK PRODUCTS (TAICANG) LTD., NORTEK PRODUCTS LTD., CUSTOMER CARE LTD., and NORWOOD INDUSTRIES LTD., <br> Plaintiffs, <br> v. <br> FNA GROUP, INC. d/b/a O.E.M. INDUSTRIES d/b/a FAIP NORTH AMERICA d/b/a SIMPSON DELCO, FNA IP HOLDINGS, INC., <br> Defendants. | Case No: 10 C 2813 <br><br> Magistrate Judge <br> Jeffrey Cole |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, manufacturers of pressure washers, entered into an agreement with defendants to provide them with pressure washers for distribution. Plaintiffs sued defendants in 2010 over the defendants' alleged failure to pay for $3 million dollars worth of product. They've since added a number of other claims. The defendants have responded with claims of their own, including their recently filed Third Amended Counterclaim, Count III of which is directed to Karen Chen, the managing director of the plaintiff companies. The defendants claim that Ms. Chen breached a confidentiality agreement she executed with them in 2003. She allegedly signed the agreement individually – not in her capacity as plaintiffs' managing director. (*Defendants' Third Amended Counterclaims* ("*3CC*"), ¶ 26). Ms. Chen has moved to dismiss that count.

The defendants claim that before the parties entered into their business relationship, plaintiffs had limited experience in the pressure washer industry. (*3CC*, ¶ 13). As a result, defendants provided the plaintiffs with proprietary information that

enabled them to manufacture the pressure washers defendants wanted. (*3CC*, ¶ 14). The agreement defined confidential information to:

> include information of whatever nature which is obtained by Karen Chen, whether before or after the date of this Agreement, either in writing or orally (including, without limitation, drawings, analyses, formulas, data, relevant technology, know-how, compilations, studies and other documents which contain or otherwise reflect or are generated from such information), (whether before or during the collaboration) by **FAIP/OEM** or any member of the **FAIP/OEM** Group and which, if disclosed in writing, is marked **«**Confidential**»** at the time of disclosure or, if not in writing, is identified as confidential at the time of disclosure, . . . .

(*3CC*, Ex. D, at 1-2). Excluded from this definition was information that was in the public domain, that Ms. Chen already possessed, that Ms. Chen obtained from a third party, or that defendants later released from confidentiality in writing. (*3CC*, Ex. D, at 2).

Under the agreement, Ms. Chen was permitted to use confidential information only for "the Purpose," which meant only for "the project of co-operation between FAIP/OEM and Karen Chen, or any member of the Norwood Group, including but not limited to products, services, manufacturing of high pressure washers, high pressure pumps, motors, accessories, steam cleaners, other cleaning equipment, high pressure hose. . . ." (*3CC*, at 3-4). Upon information and belief, the defendants allege that, contrary to the terms of the agreement, Ms. Chen employed confidential information not only for "the Project", but to develop a competing line of pressure washers. (*3CC*, ¶ 33).

Ms. Chen's motion to dismiss argues that the terms of the agreement are overly broad and unenforceable under Illinois law; the claim fails to apprise her of what confidential information Ms. Chen received or what she did with it; and the claim asks for no legally cognizable damages or remedies.

To withstand a motion to dismiss, a plaintiff – or a counter-plaintiff – doesn't have to plead a detailed set of facts, but must supply the defendant – or counter-defendant – with "fair notice of what . . . the claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93 (2007)(quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555(2007)); *Smith v. Medical Benefit Administrators Group, Inc.*, 639 F.3d 277, 281 (7th Cir. 2011). The claim must be "plausible on its face," *Twombly,* 550 U.S. at 570; *Ashcroft v. Iqbal,* 556 U.S. 662, —, 129 S.Ct. 1937, 1949 (2009), which means the court considers whether the events alleged could have happened, not whether they did happen or likely happened. *Smith*, 639 F.3d at 281. The question is whether the allegations suffice to "raise a reasonable expectation that discovery will reveal evidence" supporting the allegations and to "allo[w] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Matrixx Initiatives, Inc. v. Siracusano*, — U.S. —, —, 131 S.Ct. 1309, 1323 (2011)(citations omitted).

Ms. Chen's argument that the confidentiality agreement is so broad that it is unenforceable under Illinois law relies on two cases, *North American Paper Co. v. Unterberger*, 526 N.E.2d 621 (1st Dist. 1988) and *Trailer Leasing Co. v. Associates Commercial Corp.*, 1996 WL 392135 (N.D.Ill. July 10, 1996), in which the courts found broadly drafted non-disclosure clauses unenforceable because they purported to protect information that was not confidential. Neither case is applicable here.

The plaintiff in *NAPCO* sought to enforce an oceanic non-disclosure provision in a contract with its employee's that provided:

> any information regarding manufacturing, purchasing, research, development methods, practices, accounting, suppliers, marketing,

3

> merchandising, customers of the Company, distribution, sale or use of any and all disinfectants, special chemical products or formulae, water treatment products or methods, degreasing, sanitary and maintenance techniques, systems, products or procedures, floor care and maintenance and the equipment therefor, paper products, including, but not limited to sanitary and disposable paper products, and any and all related items, and any and all items of whatever nature or kind which the Employee has learned of, acquired or obtained knowledge of, conceived, developed, originated, discovered, invented or otherwise become aware of during the period of his employment, provided that this paragraph shall not apply to information within the public domain and generally known within the paper and packaging industry.

172 Ill.App.3d at 415, 526 N.E.2d at 624. But *NAPCO* wasn't decided on a motion to dismiss – it was a summary judgment case. The court had before it evidence that demonstrated that the plaintiff had virtually no confidential information, and its competitors could develop all the information the plaintiff claimed was confidential. 172 Ill.App.3d at 415, 526 N.E.2d at 624. There is no factually developed record to turn to here because the case is in the pleading stage.

In *Trailer Leasing*, the court looked at the enforceability of a non-disclosure provision in the context of a temporary restraining order. In other words, like here, there was no developed factual record and the court was confined to the pleadings. The defendant argued that the information covered by the provision was not confidential, but the court pointed out that the plaintiff alleged that its information – a customer list – was indeed confidential. The court properly deferred to the complaint. 1996 WL 392135, *6. Where the provision faltered, however, was in seeking to protect "'any methods and manners' of [plaintiff's] business regardless of whether the method or manner is confidential." 1996 WL 392135, *6. The court found that this went beyond "protecting possible legitimate interests of [plaintiff]."

1996 WL 392135, *6.

Unlike the provision in *Trailer Leasing*, the provision here does not purport to protect information even if it is not confidential. Quite the contrary. It includes precisely the kind of information generally deemed proprietary, such as drawings, analyses, formulas, data, relevant technology, know-how, compilations, studies and other documents which contain or otherwise reflect or are generated from such information. Only information that is identified as confidential at the time of disclosure is covered. Excluded from protection is information that was in the public domain, that Ms. Chen already possessed, that Ms. Chen obtained from a third party, or that defendants later released from confidentiality in writing. (*3CC*, Ex. D, at 2). So it is not a case where the defendant is trying to protect everything that it disclosed to Ms. Chen.

In signing the agreement – the *only* subject of which was confidentiality – Ms. Chen agreed to this definition of confidential information. She agreed that the designation of what was and what wasn't confidential would, with a few exceptions, be in the defendants' hands. It's not as though Ms. Chen had one idea of what was confidential and the defendants' had another. Ms. Chen was on notice of what was confidential each time it was disclosed to her because, under the terms of the agreement, it had to be designated as such. The defendants could not have been expected to have peaked into Ms. Chen's mind to see if she had different ideas about the provision when she agreed to abide by it. *See ConFold Pacific, Inc. v. Polaris Industries, Inc.,* 433 F.3d 952, 955 (7th Cir. 2006); *Skycom Corp. v. Telstar Corp.,* 813 F.2d 810, 814 (7th Cir.1987)((We do not "take a tour through [a party's] cranium, with [the party] as the

guide."); *Pampered Chef, Ltd. v. Alexanian*, 2011 WL 6046896 (N.D.Ill. 2011)(collecting cases).

Moreover, this was not a contract between a corporation and an employee with unequal bargaining strength; it was an agreement between sophisticated business people – a factor of analytical significance. *Cf. Farmers Automobile Ins Assoc. v. St. Paul Mercury Ins. Co.*, 482 F.3d 976, 977 (7th Cir. 2007). Ms. Chen and her company wanted the defendants' pressure washers. The defendants decided that one of the conditions under which they would provide them was confidentiality. They had a right to protect their interests. Ms. Chen did not object. Not until now, anyway.

Now, that may not be the end of it. Even between businesses, confidentiality agreements have their limits. *Tax Track Systems Corp. v. New Investor World, Inc*., 478 F.3d 783, 787 (7th Cir. 2007). Under Illinois law, such agreements are enforceable only when the information sought to be protected is actually confidential and reasonable efforts were made to keep it confidential. *Id.* The party seeking to protect it need not show that it has always been kept under lock and key or that it rose to the level of a trade secret, but it must establish that it took reasonable steps to keep it confidential. *Id.* But, as the case remains at the pleading stage, these are questions that cannot be answered and whose resolution must await another day.

Much the same can be said of Ms. Chen's other problems with the counterclaim, namely that it does not specify what confidential information she used or adequately allege damages. But the defendants need not plead a detailed set of facts, so long as the counterclaim supplies Ms. Chen "fair notice of what ... the claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93 (2007)(quoting *Bell Atlantic Corp. v.*

*Twombly,* 550 U.S. 544, 555 (2007)); *Smith v. Medical Benefit Administrators Group, Inc.*, 639 F.3d 277, 281 (7th Cir. 2011). Defendant's allegations do so.

The defendants claim that they provided Ms. Chen with confidential information and that she used it to start a competing line of pressure washers and sell them to defendants' customers. (*3CC*, ¶ 30). They call the information they disclosed "proprietary and intellectual property . . . that enabled [Ms. Chen's company] to manufacture technically and aesthetically superior products . . . ." (*3CC*, ¶ 14). The counterclaim attaches pictures of the product's Ms. Chen's company produced that were exact copies of defendants' models. (*3CC*, ¶¶ 110-111). According to the counterclaim, before the parties got together on this deal, Ms. Chen and her company "had limited experience in the pressure washer business." (*3CC*, ¶ 30).

The complaint suffices to piece together the tale: Defendants wanted pressure washers according to their designs, but they didn't want to manufacture them. They contracted with a company in China – the plaintiffs – to do it for them. That likely saved the defendants a great deal of cost in terms of labor, facilities, compliance with regulations, etc. The defendants gave the plaintiffs everything they needed to produce the desired pressure washers, and, despite confidentiality agreements, the plaintiffs used that information to make pressure washers for their own purposes, which allegedly included selling them to the defendants' customers in competition with the defendants.

Similarly, the counterclaim adequately pleads damages. The case Ms. Chen relies on to argue otherwise – *Horning v. Laboratory Corp. of America*, 2009 WL 2905553 (N.D.Ill. 2009) – does not require dismissal of the counterclaim. In *Horning*, the plaintiffs failed to contend that it sustained *any* damage due to the defendant's breach of

contract. In fact, the plaintiffs argued that they didn't have to plead any damages because the essence of the relief sought was equitable in nature in the form of a declaration that they did not owe the defendant any money. Judge Kocoras dismissed their complaint, concluding that they were required to plead legally cognizable damages to maintain their breach of contract action. 2009 WL 2905553, *3.

Here, the defendants have alleged that they were harmed by Ms. Chen's misappropriation of confidential information and suffered damages in terms of cost incurred in preparation of the project, cost of relevant management personnel, traveling expenses, lawyers' and accountants' fees, and loss of earnings. (*3CC*, ¶ 175). That's a far cry from not asking for any damages at all. And while it's true that the counterclaim's *ad damnum* clause lumps Ms. Chen in with her fellow counter-defendants, it is enough that the count against her specifies the damages for which she is alleged to be responsible..

*Twombly* and *Iqbal* changed long-accepted pleading requirements and now demand more from pleadings, in part as a means of dealing with the burdens on and costs to the judicial system and litigants from discovery in cases that perhaps should not have been filed in the first instance, but which could not be weeded out under the regime of *Conley v Gibson*, 355 U.S. 41 (1957).[1] Still, punctilious and factually elaborate

---

[1] In *Twombly* the Court said:

> It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through "careful case management," *post*, at 1975, given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side. See, *e.g.*, Easterbrook, Discovery as Abuse, 69 B.U.L.Rev. 635, 638 (1989) ("Judges can do little about impositional discovery when parties control the legal claims to be presented and conduct the discovery themselves"). And it is self-evident that

(continued...)

complaints are not required. Rule 8(a) is alive and well. There is enough in the counterclaim fairly to inform Ms. Chen of what she is alleged to have done, and the counterclaim cannot be said to be either speculative or implausible on its face. No more is required. *Twombly*, 555 U.S. at 570; *Iqbal,* 556 U.S. 662, —, 129 S.Ct. at 1949.

## CONCLUSION

For the foregoing reasons, the motion of third party defendant Karen Chen to dismiss Count III of defendants' third amended counterclaim [#108] is DENIED.

**ENTERED:** _____
**UNITED STATES MAGISTRATE JUDGE**

**DATE:** January 17, 2012

---

[1](...continued)
>  the problem of discovery abuse cannot be solved by "careful scrutiny of evidence at the summary judgment stage," much less "lucid instructions to juries," *post,* at 1975; the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings. Probably, then, it is only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to avoid the potentially enormous expense of discovery in cases with no " 'reasonably founded hope that the [discovery] process will reveal relevant evidence' " to support a § 1 claim. 550 U.S. at 559-560.